And we move to the third case this morning, U.S. v. Galloway. Another familiar face, Mr. Henderson? Good morning. May it please the Court. My name is Peter Henderson. I represent Jason Galloway. Jason Galloway was sentenced on the basis of a plainly erroneous guidelines range, and so we'd ask the Court to reverse and remand for resentencing. The threshold issue, of course, is the language in the plea agreement and the appeal waiver, and the parties here entered into a sort of unusual appeal waiver language that was conditional, in particular that Mr. Galloway would not be able to appeal the sentence only in the event that the Court sentenced him to a sentence that was higher or lower than any recommendation of either party. I don't see many sentencings where this would not be triggered, because in almost every sentencing the government will recommend a particular sentence, the defendant will recommend a different sentence, and that would necessarily mean that the appeal would be waived. But in this case, Mr. Galloway did not recommend a particular sentence. I don't know if that was strategic or just happenstance, but what it means is that the district court sentence, because it agreed with the government's recommendation, was not higher or lower, certainly than the government's recommendation, or than a nonexistent defendant recommendation. Part of the controversy in this case is, well, what does it mean to say a recommendation? Certainly Mr. Galloway had his lawyer step up to the podium and recommend which factors the Court should look at in determining a sentence. That's just not what a recommendation means in federal court when it comes to sentencing.  I don't want to testify myself, but if you ask me, what's your recommendation, I'm going to give you a number. And I think if we were to ask in the federal system, well, what was the government's recommendation in this case, the answer would be 120 months. It wouldn't be that the defendant is a danger to the community and that he has a lengthy criminal history, etc. That's maybe part of the recommendation or that informs the recommendation, but the recommendation is the particular length of the sentence or the range. You can also recommend a range. All of those are numbers, though, and that's why the plea agreement language talks about a sentence that is higher or lower than the recommendation. For a thought experiment in this case, for example, what sentence would be lower? If Mr. Galloway made a recommendation, what sentence would be lower than that recommendation? Would 84 months be lower than the recommendation? Would 72? There is no recommendation here. It's impossible to say. Certainly any defense lawyer, Mr. Galloway, wouldn't want the statutory maximum. So in that sense, I suppose that sentence is higher than what the defendant wanted. That doesn't mean that it's higher than his recommendation. He didn't make a recommendation. What about a situation, Mr. Henderson, of government recommends 120 months. Defense does not recommend a particular length with regard to imprisonment. Then government makes a recommendation with regard to supervised release, even though supervised release is not required by the statute. What if that were the fact circumstances here? Well, it would depend if the court imposed a different term of supervised release than the government recommended, for example. I think the appeal is probably waived. I would certainly make an argument that there's ambiguity. But that type of recommendation, that is a recommendation. Say we want three years of supervised release. The court imposes two. That's lower than the recommendation of the government. That's why this provision doesn't make a lot of sense. When I first read it, I thought, okay, it makes sense. If it's higher than the government's recommendation, you can appeal it. Otherwise, you can't. But, of course, that's not what the language says. I don't know if that's what the language was intended to say. Have you seen anything like this before? Only out of Evansville. There was one other case that came to this court from Evansville that had the same language. So it must be a local whatever they're drafting, we'll ask Mr. Wright. In any event, at worst, this is ambiguous language. In a plea agreement, the ambiguities are going to be construed in Mr. Galloway's favor. So we certainly think this appeal can proceed. On the merits, this is a very straightforward appeal. This follows directly from United States v. Tate. The only complication comes with what Kentucky law was in 2000, and it's clear we cited the Gray case in our reply brief. I think that puts the issue to rest. Before the 2003 decision in COTLA, Kentucky allowed for convictions based on the possession of any chemicals. After 2006, it's two chemicals, and so we assumed in our brief that they would need to prove two chemicals. That's now the authoritative interpretation of the statute. But two chemicals that could be proved are anhydrous ammonia and lithium, and so this is categorically overbroad. We made the point in our reply brief as well that, again, this is an elements-based test. It's not about the facts. And under Kentucky law at the time Mr. Galloway was convicted, the elements were categorically overbroad. I want to take you outside the methamphetamine context because Mr. Galloway has a lengthy record. And I believe I've got this correct. There was a 2013 battery, which would be characterized as a crime of violence. There's also a 1999 criminal recklessness and a 2010 criminal recklessness, the second of which was with regard to, there's some description, I think some debate as to whether or not it's a crime of violence. In the 2010, the same thing. If our counting does not include the methamphetamine conviction and includes one of those other two, where does that leave your client? There would still only be one predicate. So the 1999 case didn't count for points, and so it would not count as a crime of violence or a controlled substance or a crime of violence because it's too old. Because of the age. The age. The 2010 conviction, there is some question in this court about criminal recklessness in Indiana. I would refer the court to the Smith case. This is at 544 Federal 3rd, 781, where the court, I think, correctly found that it does not qualify as a crime of violence because it has a mens rea of recklessness. There is another case called Clinton that came two years later, and that's at 591 Federal 3rd, 968, where the court found that, in fact, it did qualify. But I think that that decision was wrongly decided because what happened was the court used the modified categorical approach at the time to look at the actual facts of the case to see what has the defendant actually done. And later decisions from the Supreme Court in DeKalb and Mathis make clear that that's not how you do the categorical approach. Unfortunately, Judge Bower is not here to hear it. He couldn't tell me to defend his decision. I'm sure you mentioned DeKalb and Mathis. DeKalb and Mathis, I think, show that Clinton was wrongly decided. I haven't briefed this. What I would suggest as a procedural matter is the government's waived any argument that that's a crime of violence. They haven't raised it on appeal.  But I do think if we were to brief it, I would be able to produce evidence that it's an indivisible statute in terms of the mens rea. I believe that the state of Indiana charges recklessly, knowingly, or intentionally. And so it's not as if you can look to the facts to see what actually happened. It's still categorically overbroad because it's indivisible and includes reckless behavior. Again, would you address this waiver? It says it almost seems like anything the judge does, he weighs in appeal. So unless the parties agree on the sentence and the judge then imposes that same sentence, then the sentence would not be higher or lower than any recommendation. Of course, there wouldn't be an appeal in that case because the defendant agreed to the sentence. But if one party does not make a recommendation, the other party makes a recommendation of 120 months, the judge says, yes, 120 months. The sentence is not higher or lower than any recommendation. And if we're grappling with regard to what quote recommendation end quote means, it's metaphysical, it's people's experience, we don't have necessarily any case law or sentencing guidelines language to guide us. Is that correct? Right. I mean, it is very anecdotal in terms of what sentencing recommendation means. I mean, we went back to some of the cases, you know, stemming from Santabello, for example, where the government agrees to recommend this sentence. They recommend a different sentence. That's a breach. One of the cases, I'm sorry, I forget the name. There was an argument on appeal that the government had breached. They had made the recommendation to 108 months, but they had given an explanation that suggested, boy, you ought to impose a sentence a lot longer than that. And the court said, no, that's not a breach. They made the recommendation. So we certainly think that that's what recommendation means. But, again, the tie goes to the defendant in these sorts of situations. With that, I think I only had 10 minutes, but I appreciate the extra five, and I'll save whatever time I have left for rebuttal. Thank you. Thank you. Thank you, counsel. May it please the Court, Brian Reitz for the United States. I'd like to start with a threshold question, the appeal here. Mr. Galloway recommended a sentence below the 121 months the court imposed. The sentence guideline was 120 months, and Mr. Galloway recommended something below that that can only be understood as something lower than what the court recommended. I would like to pick up with that. I think my opponent today said if both sides had recommended 120 months and the court gave 120 months, that would be the waiver wouldn't apply, but there would be no appeal. But I think this case shows that there would be appeal here today because if there was 120 months based on a guideline range of 120 months, we would be here for the same reason that Mr. Galloway would be objecting to the controlled substance offense enhancement. So there would be an appeal in that situation. And if I could step back, I think perhaps what would happen on remand offers a good explanation of why a recommendation doesn't have to be a particular range. So if the court agrees with Mr. Galloway in remands, his guideline range will be 92 to 115 months. The government has agreed to recommend a sentence in that range. If the government recommends a sentence above that range, but without saying a particularized sentence, and the court imposes something above that range, Mr. Galloway will surely argue that the government breached the content of the plea agreement, and, in fact, he would be correct because the government would have recommended something above what it agreed to do so, despite not having recommended a numerical sentence. So a recommendation absolutely can be to a range. It can be something general. It doesn't have to be a particular numerical sentence. The wording of this waiver escapes me. I mean, how often do you use it? So this is the second time I've seen it. A recent case, actually, that I had against Mr. Henderson, Josh Bolin had this appeal, and the court applied the appeal waiver. It's the only two times I've seen it. Hopefully we won't see it moving forward. That's all I can say. But, I mean, we agree that it is unique, and probably not the most desirable, but we do think it applies in this case here. Moving on to the merits issue, I think, obviously, the dispositive issue here is what Kentucky has said about its law. So out of respect to the Kentucky State Courts, I think we should look to what they have said. We would agree that it's somewhat unclear pre-2003 COTILLA, but the cases before COTILLA essentially fall into three buckets. The first bucket, the cases the government has cited on page 18 and 19, are cases that at least imply that a defendant had to possess all the necessary precursors, which would make this a dire case. The second bucket would be, we would point the court to pages 8 to 10 in Mr. Galloway's reply brief, and those are cases in which the convictions of something less than that were actually overturned on appeal. We think those cases help us as well, because there were convictions, if they were less than all the necessary precursors, they weren't sustained on appeal. Then there is a third bucket, which is sort of the other, which three cases fall into that bucket, and I think it merits looking at those cases a little more closely. So there are three. First of all, Spivey. There is Dicke saying that COTILLA doesn't apply retroactively. However, Mr. Spivey possessed all the necessary precursors. There is Farthing. Farthing, again, says that COTILLA was new. However, Farthing possessed methamphetamine residue, a meth lab that had shown signs of use, and there was testimony that admitted at trial that he was, in fact, manufacturing meth. So I think those two cases actually both go in the first bucket. That leaves Gray. Gray, we would agree, is Mr. Galloway's best case, but we should look at what happened in Gray as well. Gray agreed to teach an undercover officer how to manufacture meth. He arranged a meeting with that undercover officer. He brought all the necessary ingredients except anhydrous ammonia, but he believed that the undercover agent was going to bring the anhydrous ammonia. They went to this location, and Gray unpacked all of the ingredients. So Mr. Gray did not actually possess ammonia. However, he thought it was going to be brought to him by the officer, and he had also offered to teach the officer how to manufacture meth. That appears to be the out-of-bounds of where Kentucky has interpreted pre-Cotilla. We would submit if that unwinds this, we think that's strange, but that is the out-of-bounds. And I'm sorry, in Gray, the undercover officer brings the ammonia, or the defendant brings the ammonia? Gray did not have ammonia. The undercover officer said he was going to bring the ammonia. In fact, that was the agreement, the exchange. Gray would teach the undercover officer how to manufacture meth if the undercover officer, who, of course, he didn't know was an officer, provided the ammonia. So Gray went somewhere intending to manufacture meth with everything necessary to manufacture meth except the ammonia that he believed the undercover officer would be bringing. And when you say unpack all the ingredients except for the ammonia? Yes. Excuse me. I don't want to confuse the court on that. He did not personally possess ammonia. I don't want to lead the court astray on that, but he believed the ammonia would be there. So we would say that Gray is the best case for Mr. Galloway. If that unwinds his conviction, if that makes it overbroad, so be it. If that is the out-of-bounds of how Kentucky interpreted its statute, if that is the farthest, the most overly broad interpretation pre-Cotilla, we don't find that very overly broad. And it's almost in the hypothetical situation where it seems that it's insufficient to show a statute overly broad. But that is as broad as Kentucky has interpreted a statute, which I think, as we cited those three buckets, show that it's not that overly broad. I had a discussion with Mr. Henderson with regard to these other 1999 criminal recklessness and 2010 criminal recklessness. Your thoughts on that? Yes, that was going to be my third point and last point. We think that the court's decision on the mens rea is probably unlikely, probably the incorrect decision because of voicing. We would agree that if the court has concerns about that, perhaps supplemental briefing, or if the court remands, we can argue that below. We think that conviction likely qualifies. We didn't argue it on appeal because that's not what the parties were proceeding under. But we think there's a good chance that Indiana criminal recklessness qualifies. But briefing here or below would probably be necessary for the court to decide that, I think. You're talking about the 2010 one? Yes, the 2010. That was criminal recklessness resulting in serious bodily injury. We know in other contexts, from battery, that serious bodily injury in Indiana is enough to trigger crime and violence enhancements. But criminal recklessness, it's going to be more about the mens rea, of course. And I think Mr. Henderson cited their competing opinions. We think Judge Bowers' opinion is better because, after voicing, the mens rea of recklessness should suffice. But again, supplemental briefing and or briefing in the district court, I think, is the best realm to resolve that issue, considering that's not what the district court decided. That's not really what this argument is about. We know the court can affirm it on any grounds. But that might be a little hairy to decide without briefing, in fairness to Mr. Galloway. With that, we would ask the court to affirm the district court. Thank you. Just to pick up on that last point, the government's waived an argument that criminal recklessness qualifies as a crime of violence. They've never raised it. It's a bit too late now. But let me focus, too, on the description of the facts of the Kentucky cases is totally irrelevant to the categorical approach. Recently, this court decided that federal kidnapping is not a violent felony, not a crime of violence. Almost every case you'll find in the federal reporter of kidnapping involves violence. It's not about the facts of the case. It's about the elements of the offense. And so when the Kentucky appellate court says, before Cotilla, possession of any chemicals qualified as this offense, that's what the court has to look at. The facts are just irrelevant to the categorical approach. And the Supreme Court keeps saying this. In Mathis, it says, look, we're tired of saying this. It's elements. It's not facts. And that, by the way, is the same reason why Clinton, we think, was wrongly decided. Because, again, the court delved into the facts there instead of restricting its view to the elements. But unless the court has any other questions. Mr. Henderson, do you know why the full plea and full sentencing transcripts were not No. Usually those are docketed in the district court. But I'm not sure of that. I can certainly look into it, though, if you'd like. Could you please? Yeah. Thank you. You're not hiding anything. No. I hope that you have the transcripts. And if you don't, I'll certainly provide them to you. But I'll certainly look at the district court. Thank you. We do not. So that would be appreciated. Okay. Thank you, Your Honor. Thank you both. The case is taken under advisement.